IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RUSSEL GORE** | : | |
|     **Plaintiff,** | : | **CIVIL ACTION** |
| | : | **No. 22-1051** |
| **v.** | : | |
| | : | |
| **WEST COAST SERVICING, INC., et al.** | : | |
|     **Defendants.** | : | |

**MEMORANDUM**

**Schiller, J.**                                                                                           **October 4, 2022**

After a successful foreclosure action, Plaintiff Russel Gore's home was conveyed to Defendant West Coast Servicing, Inc. by Sheriff's Deed and West Coast retained Defendant Independence Real Estate Sales, LLC ("IREO") to prepare it for sale. IREO then retained Defendant A Town Properties, Inc. ("ATP") to take possession of the property while Gore was not there. Gore sued Defendants, alleging they unlawfully took possession of the house and disposed of his personal goods. He asserts claims against them for violations of the Fair Debt Collection Practices Act ("FDCPA") and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTCPL"), and for trespass, conversion, breach of the peace,[1] intentional infliction of emotional distress, and intrusion upon seclusion. West Coast moves to dismiss Gore's claims against it (ECF 24), as does ATP (ECF 25).[2] The Court will grant their motions. Because Gore fails to state a plausible claim under the FDCPA, his FDCPA claims will be dismissed against all Defendants and the Court will not exercise supplemental jurisdiction over his state law claims.

---

[1]   Gore has withdrawn his claim for breach of the peace against ATP. (Pl.'s Resp. to ATP, ECF 27 at 10.)

[2]   IREO answered Gore's Amended Complaint. (ECF 23.)

I.      **BACKGROUND**

In 2000, Household Realty Corporation recorded a mortgage on Gore's home at 7355 Rugby Street in Philadelphia, Pennsylvania (the "Property"). (Am. Compl., ECF 18 at ¶ 8.) Household Realty assigned the mortgage to West Coast Realty Services in 2006. (*Id.* ¶ 9.) In 2016, West Coast Realty Services assigned the mortgage to Defendant West Coast. (*Id.* ¶ 10.) Gore alleges he was "unaware of these assignments" and "continued making payments to the then defunct [Household Realty] and not to the then current mortgage holders." (*Id.* ¶ 11.) West Coast commenced a foreclosure action against him in 2017 and he alleges "the Property was legally conveyed to West Coast by Sheriff's Deed recorded on or about March 11, 2020." (*Id.* ¶¶ 12-13.) Gore does not allege he ever challenged the validity of the foreclosure action.

Following the foreclosure, West Coast retained IREO to prepare the Property for sale. IREO subsequently retained ATP, which specialized "in property preservation, evictions, and restoration services, to take possession" of the home. (*Id.* ¶ 15.) ATP arrived at the 7355 Rugby Street on June 18, 2021 (over a year after the Sheriff's Deed was recorded), while Gore was away "receiving medical treatment for late stage cancer." (*Id.* ¶¶ 16-17.) Gore does not allege he resided at the Property at the time of the events alleged in the Amended Complaint; instead, he alleges he resides in New Jersey. (*Id.* ¶ 1.) Because Gore was not at the Property and the doors were locked, ATP "broke into" the house "through the back door . . . ." (*Id.* ¶¶ 22-23.) ATP asked Gore's "neighbors to enter the Property and take any items they wanted so that ATP could save on disposal costs" and "threw away any items not taken by neighbors into a dumpster" over "the next two or three days." (*Id.* ¶¶ 24-26.) When Gore returned to the house "a few days later," he found "his personal property was gone . . . including birth certificates and . . . an urn on the fireplace mantle that contained his father's ashes." (*Id.* ¶ 27.)

Gore acknowledges the Property was legally conveyed to West Coast (*id.* ¶ 13), but also contends he "was legally in possession of the Property" at all relevant times and that no Defendant obtained his permission to enter the Property or made meaningful attempts to contact him. (*Id.* ¶¶ 32, 34, 66.) He also alleges West Coast "never commenced an action for ejectment or any other legal proceedings" before taking possession, that evictions and/or ejectments were "barred" by "national and local governments" in June 2021, and that the Property "was not certified as vacant and abandoned" when ATP arrived. (*Id.* ¶¶ 18-20.)

**II.    STANDARD OF REVIEW**

To satisfy Federal Rule of Civil Procedure 12(b)(6), Gore's Amended Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he plausibility determination is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (quoting *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016)). The Court "affirmatively disregards" legal conclusions in the [Amended] Complaint, assumes all remaining factual allegations to be true, construes those truths "in the light most favorable to the plaintiff," and draws "all reasonable inferences" from them. *Connelly*, 809 F.3d at 790. A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the [Amended C]omplaint has alleged–but it has not 'show[n]'—'that [Gore] is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Rule 8 . . . does not

3

unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.

## III. DISCUSSION

### A. FDCPA

Gore fails to state a claim under the FDCPA. To plead a plausible claim for relief, Gore must allege sufficient facts to show: (1) he is a consumer, (2) the relevant defendant is a debt collector, (3) the relevant defendant's "challenged practice involves an attempt to collect a 'debt' as the Act defines it," and (4) the relevant defendant "violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). Gore claims ATP and West Coast violated FDCPA sections 1692d and 1692f.

#### 1. FDCPA Claim Against ATP

ATP argues Gore's FDCPA claims against it fail because it is not a "debt collector." (ATP Mem., ECF 25 at 5.) Gore contends ATP is a debt collector because he "owed a debt to West Coast" and "West Coast sought to seize the possession of the Property" through ATP's services "[i]n an effort [to] collect on that debt." (Pl.'s Resp. to ATP at 8.) A debt collector is "any person . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6). "For the purpose of [15 U.S.C. § 1692f(6)], [the] term [debt collector] also includes any person . . . in any business the principal purpose of which is the enforcement of security interests." (*Id.*) Gore's allegations are not enough to show ATP was a debt collector under either definition because he fails to adequately allege the existence of a debt.

A "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the

4

transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Gore, however, has not plausibly alleged he owed a debt to West Coast at the time of the events described in the Amended Complaint.

West Coast foreclosed upon the Property to recover on the mortgage loan that the Property secured. *See Brown v. United States*, 95 F.2d 487, 489 (3d Cir. 1938) ("The very purpose of a foreclosure proceeding is to put an end to the right to redeem and thus to make the conveyance to the mortgagee absolute and unconditional.") Gore acknowledges that, as a result of the unchallenged foreclosure action, the Property was conveyed to West Coast by a recorded Sheriff's Deed more than a year before ATP allegedly permitted neighbors to take items from the Property and disposed of other items in a dumpster while he was not on the premises. (Am. Compl. ¶¶ 13, 16-17, 24-26.) Gore has not set forth any allegations to show the foreclosure action failed to satisfy any debt he may have owed to West Coast. *See, e.g., PNC Bank, Nat'l Ass'n v. Balsamo*, 634 A.2d 645, 654 (Pa. Super. Ct. 1993) ("Where a judgment creditor purchases the debtor's realty at a sheriff's sale and fails to petition the court to fix the fair market value of the property within the six month time limit prescribed by the statute, the judgment creditor is deemed to have received full satisfaction in kind of the underlying debt."); *see also* 42 Pa. Cons. Stat. § 8103(d). So, if Gore had no remaining outstanding obligation to West Coast, ATP could not have been not attempting to collect any "debts owed or due" to West Coast. Nor did ATP's actions have a "principal purpose" of enforcing West Coast's security interest in the Property. On the allegations in the Amended Complaint, West Coast, not Gore, owned the Property by the time ATP arrived there.

It follows that Gore's allegations are not sufficient to state a claim under section 1692d, which provides that "a debt collector may not engage in any conduct the natural consequence of

which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Examples of violative conduct include the use or threat of violence, the use of obscene language, the publication of a list of consumers refusing to pay debts, coercive advertisements for the sale of any debt, and harassing telephone calls. *Id.*

The Court cannot draw a reasonable inference that ATP engaged in "conduct the natural consequence of which is to harass or abuse." 15 U.S.C. § 1692d. Gore makes a conclusory allegation that West Coast never commenced an action for ejectment or any other legal proceedings to lawfully take possession of the property. (Am. Compl. ¶ 19. However, "[e]jectment is a possessory action only, and can succeed only if the plaintiff is out of possession, *and* if he has a present right to immediate possession." *Brennan v. Shore Bros.*, 110 A.2d 401, 402 (Pa. 1955) (emphasis added). Once the Sheriff's Deed was recorded, West Coast's "right to possession" attached and Gore no longer had a present right to possession.[3] *Wells Fargo Bank, N.A. v. Long*, 934 A.2d 76, 81 (Pa. Super. Ct. 2007) (citation omitted); *see also Fannie Mae v. Scarborough*, No. 02669 April Term 2011, 2012 WL 6051098, at *4 (Pa. Ct. Com. Pl. May 23, 2012) ("When a party asserts a possessory interest in real property based [on] a successful bid and purchase at a

---

[3] Gore's FDCPA claim is not saved by his argument that West Coast "was legally precluded from taking possession" because of a "federal moratorium on evictions and other possessory actions." (Pl.'s Resp. to ATP, ECF 27 at 5.) Although his Amended Complaint cites an alleged bar on evictions or ejectments, it does not identify any legal basis for it. (Am. Compl. ¶ 18.) In his response to ATP's Motion, he argues 86 Fed. Reg. 16731 (March 31, 2021) precluded West Coast from taking possession of his property notwithstanding the prior foreclosure and sheriff's sale. (Pl.'s Resp. to ATP at 5.) But in his surreply, Gore reverses course, and insists "[n]one of [his] claims rely on the applicability of the Moratorium." (Pl.'s Surreply, ECF 31 at 1.) Even they do, he has not sufficiently alleged the moratorium applied to him because it only protects "covered person[s]" from eviction, as ATP argues in its reply to his response. 86 Fed. Reg. 16731, *Summary* (March 31, 2021). (*See* ATP Reply, ECF 30 at 2-3.) A covered person is "any tenant, lessee, or resident of a residential property who provides to their landlord, the owner of the residential property, or other person with a legal right to pursue eviction or a possessory action, a declaration under penalty of perjury." *Id.*, *Definitions.* Gore does not allege he leased the property or that he ever submitted the required declaration to West Coast or to anyone else.

sheriff's sale, the right to immediate possession accrues when the sheriff's deed is acknowledged and recorded."). Under the circumstances, his section 1692d claim cannot withstand Defendants' motion.

Gore's section 1692f claim also falls short. Section 1692f(6) bars "debt collectors" from

> [t]aking or threatening to take any nonjudicial action to effect dispossession of property if – (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement.

*Id.* § 1692f. Because Gore concedes West Coast had a present right to possession of the property at the time of ATP's alleged conduct, he has not plausibly alleged the Property was "exempt by law" from dispossession. *See Wells Fargo*, 934 A.2d at 81; *see also Ishmael v. GM Fin. Inc.*, No. 22-1095, 2022 WL 2073821, at *3 (E.D. Pa. June 9, 2022) ("Section 1692f(6) requires, among other things, 'no present right to possession of the property claimed as collateral through an enforceable security interest.'"). Gore's FDCPA claims against ATP (Counts III and IV) will be dismissed against ATP.

### 2. FDCPA Claim Against West Coast

West Coast, like ATP, moves to dismiss Gore's FDCPA claims against it. It argues the claims fail because it "was not attempting to collect a 'debt.'" (West Coast Mem. at 4.) Gore responds that his claim under section 1692(d) can proceed because West Coast's actions were "taken in connection with the collection of a debt" he owed. (Pl.'s Resp. to West Coast at 6.) He also contends "the repossession of a home due to failure to make mortgage payments" is within the ambit of his Section 1692f(6) claim because "[r]epossession is part of the debt collection process." (*Id.* at 7.)

For the reasons already stated, Gore has not plausibly alleged he had an outstanding debt to West Coast at the time of the events alleged in the Amended Complaint. As a result, any of its alleged actions were undertaken to enforce its own interest in the Property. Nothing West Coast is alleged to have done was done in connection with collecting a debt within the meaning of the FDCPA. The Court will dismiss Gore's FDCPA claim against West Coast (Counts III and IV).

### 3. FDCPA Claims Against IREO: *Sua Sponte* Dismissal

The Court will dismiss, *sua sponte*, Gore's FDCPA claims as to IREO, even though IREO did not move for dismissal. *See Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980) ("The district court may on its own initiative enter an order dismissing the action provided that the complaint affords a sufficient basis for the court's action."); *see also Roman v. Jeffes*, 904 F.2d 192, 196 (3d Cir. 1990) ("[T]here are times when a court may *sua sponte* raise the issue of the deficiency of a pleading under Rule 12(b)(6) provided that the litigant has the opportunity to address the issue either orally or in writing."); *Zaslow v. Coleman*, 103 F. Supp. 3d 657, 664 (E.D. Pa. 2015) ("[E]ven if a party does not make a formal motion to dismiss, the Court may on its own initiative dismiss the complaint for failure to state a claim upon which relief can be granted where the inadequacy of the complaint is apparent as a matter of law."). Gore had notice of the issues the Court would reach, had the opportunity to fully address them, and the question of whether Gore had an outstanding debt at the time of the events alleged in the Amended Complaint is equally applicable to IREO, West Coast and ATP. *See Shipp v. Donaher*, No. 09-2475, 2010 WL 1257972, at *13 (E.D. Pa. Mar. 25, 2010), as corrected (Apr. 1, 2010) (dismissing FDCPA count against non-moving defendants *sua sponte* because they, like the moving defendants, were "not alleged to have attempted to collect a debt from the" plaintiffs). On the allegations in the Amended

8

Complaint, nothing IREO did was related to collecting a debt within the meaning of the FDCPA, so the Court will dismiss Gore's FDCPA claim against it (Counts III and IV).

B.     **State Law Claims: Supplemental Jurisdiction**

Gore's remaining claims are based only on state law.[4] With no federal claims remaining, his pendent state claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). Because Gore may reassert his state law claims in state court and because discovery has yet to begin, the Court's exercise of supplemental jurisdiction is not justified by considerations of judicial economy, convenience, or fairness to the parties. *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.") (emphasis added).

C.     **Leave to Amend**

Leave to amend a complaint is appropriate "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court can deny leave when amendment would be futile or inequitable, such as when any amended complaint would not withstand a motion to dismiss. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Because the Court cannot say for certain at this time whether amendment would be inequitable or futile, Gore may file a Second Amended Complaint, but only to the extent he is able to allege facts sufficient to state a plausible claim for relief within the Court's limited subject matter jurisdiction.

An Order consistent with this Memorandum will be docketed separately.

---

[4]     Gore's Amended Complaint does not set forth a basis for invoking the Court's diversity jurisdiction because he does not allege the amount in controversy is in excess of $75,000. *See* 28 U.S.C. § 1332(b).